IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

RICHARD HOWARD BEALL, JR. #13801

Plaintiff,

v.

MACAULEY UJOATUONU

Defendant.[1]

Case No.: GJH-16-3438

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Richard Howard Beall, Jr. is committed to the Maryland Department of Health ("the Department"). He claims that Defendant Macauley Ujoatuonu, a nurse employed at the Clifton T. Perkins Hospital Center ("Perkins"), violated his constitutional rights by using excessive force against him and administering medication against his will. ECF Nos. 1, 4, 5.[2] Now pending before the Court is Defendant's unopposed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 10.[3] Counsel for the Department has also filed a court-ordered report on Beall's mental health status to assist in determining whether appointment of a guardian ad litem is necessary. ECF No. 9. No hearing is necessary. *See* Local

---

[1] By Order dated February 2, 2017, the Court dismissed all defendants except for "Defendant Macully," the only defendant having an alleged personal involvement in the actions underlying Plaintiff's Complaint. *See* ECF No. 7. Defendant's correct name is Macauley Ujoatuonu. *See* ECF No. 10-1 n.1. The Clerk will be directed to amend the docket accordingly.
[2] Mindful that Beall is a self-represented litigant, the Court accords liberal construction to his filings. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007).
[3] Beall was notified that he was entitled to respond to the motion and submit affidavits and supporting materials. ECF No. 11. *See Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir. 1975) (reasoning that pro se plaintiffs should be advised of their right to file responsive material to a motion for summary judgment).

1

Rule 105.6 (D. Md. 2016). For the reasons that follow, Defendant's Motion, construed as a Motion for Summary Judgment, is granted, in part.

I.  **BACKGROUND**

Beall initiated this case on October 13, 2016 by filing a Complaint that he later supplemented at the Court's direction and then filed another supplement, alleging that in May of 2016, Defendant restrained him with excessive force in violation of his rights under the Eighth Amendment. ECF Nos. 1; 4. Beall claims that although he tried to be compliant, he was subjected to pain and torture. He claims he was placed in cervical restraints, his head was pushed back, and he was injected with medication. ECF No. 4 at 3.[4] Beall claims Defendant "put a pen in my neck threat[en]ing me." *Id.* at 4. Beall avers videotape recordings of the incident were lost. ECF No. 1. at 3. Beall's request for relief includes damages, an investigation, release from Perkins, and entry into a witness protection program. *Id.*

The record, as set forth in Defendant's Motion, and without response from Plaintiff, provides a detailed description of the events underlying Plaintiff's Complaint. On May 31, 2016 at 8:20 p.m., Beall approached a nurse's station. He refused his medication (Olanzepine), as well as an intramuscular injection of the medication as an alternative. ECF No. 10-6 at 1 (Progress Note of Macauley Ujoatuonu dated May 31, 2016). Beall indicated that he would not accept the intramuscular medication and "refused redirection" when asked to leave the nurse's station so that other patients could receive their medication. *Id.* Beall then reached through the open window of the nurse's station and punched Defendant in the face. *Id.* Beall remained combative while staff placed him into a restraint chair, using his head to hit Defendant's lower abdomen

---

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

while he was being restrained. *Id.* When the nurse manager came to assess him, Beall was uncooperative and said "fuck you bitch." *Id.*

At 8:45 p.m., Dr. Sameer Patel assessed Beall and found the staff's response appropriate because Beall had created an imminent danger as a result of punching a nurse and remaining combative when the staff restrained him. *See* ECF No. 10-7. Patel reported that at 9:00 p.m. Beall threatened that he would "get the RN." *Id.* Patel approved Beall's placement in a chair restraint for four hours. Beall was assessed by staff every fifteen minutes. ECF No. 10-8. During these assessments, he was found to be a serious and imminent threat to himself. At 10:15 p.m., Beall was released from the restraint chair and returned to his room. *Id.* After being released from restraint that evening, Beall did not indicate he was injured or complain to the treatment team. ECF No. 10-9. On the following day, June 1, 2016, Beall refused his morning medication (Valproic Acid and Fluphenazine hydorcloride) and was administered his medication by injection. *Id.*

## II. STANDARD OF REVIEW

Defendant's Motion is styled as a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) or, in the Alternative, for Summary judgment under Fed. R. Civ. P. 56. If the Court considers materials outside the pleadings, as it does here, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Based on the title of Defendant's Motion alone, Beall "was on notice that this motion might be treated as one for summary judgment." *See Laughlin v. Metropolitan Wash. Airports. Auth.,* 149 F.3d 253, 260 (4th Cir. 1998). Beall was served with a copy of Defendant's Motion and accompanying attachments and provided with a

3

*Roseboro* notice, which advised him of the pendency of the motion for summary judgment and that he was entitled to respond with affidavits, declarations, or other materials contesting the evidence filed by Defendant. *See* ECF Nos. 10 at 2; 11; *see also Gay v. Wall*, 761 F.2d 175, 178 (4th Cir. 1985) ("When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment."). Beall has not elected to provide a response or request discovery, and the Court is satisfied that it is appropriate to address Defendant's Motion as one for summary judgment.

Granting summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv., Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23.

A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only genuine if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."

4

*Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 324–25). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

### A. Guardian Ad Litem

In accordance with the Court's February 2, 2017 Order, ECF No. 7, counsel for the Department filed a report on Beall's mental health status to assist the Court in deciding whether appointment of a guardian ad litem is necessary. ECF No. 9. Rule 17(c)(2) of the Federal Rules of Civil Procedure requires courts to appoint a guardian ad litem or take other appropriate action to protect an incompetent person. Fed. R. Civ. P. 17(c)(2) states:

> A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

With respect to Rule 17(c)(2), the Fourth Circuit has observed: "The practical problem presented by a case in which a presumably competent party might be thought to be acting oddly, or foolishly, or self-destructively in prosecuting or defending a civil lawsuit, with or without counsel, is a real one." *Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986). The Court noted that "[p]arties to litigation behave in a great variety of ways that might be thought to suggest some degree of mental instability." *Id.* Rule 17(c)(2) recognizes the existence of some forms of mental deficiency which may affect a person's practical ability to manage his or her own affairs

5

that goes beyond "something other than mere foolishness or improvidence, garden-variety or even egregious mendacity, or even various forms of the more common personality disorders." *Id.*

Although Rule 17(c)(2) allows the court to appoint a guardian ad litem, it does not compel appointment. Rather, it grants the court discretion to issue an "appropriate order" to protect the interests of an unrepresented, incompetent litigant. *See Seibels, Bruce & Co. v. Nicke*, 168 F.R.D. 542, 543 (M.D.N.C. 1996). Further, Rule 17(b)(3) provides, in relevant part, that a determination regarding the capacity to sue or be sued is controlled by state law. Under Maryland law, a person is presumed competent to stand trial and adults are presumed to be capable of making their own informed decisions, even after involuntary admission to a psychiatric hospital. *Beall v. Maryland*, No. GJH-15-2180, 2016 WL 4512718, at *4 (D. Md. Aug. 22, 2016) (citing *Williams v. Wilzack*, 319 Md. 485, 573 A.2d 809, 830 n.8 (1990) ("The fact that an inmate has been involuntarily institutionalized in a psychiatric facility is not tantamount to finding the inmate is mentally incompetent to make treatment decisions.")); *see also Peaks v. State*, 18 A.3d 917, 925 (Md. 2011). However, if a person is deemed incompetent and does not have a duly appointed representative, he or she may sue by next friend or by a guardian ad litem. *See Beall v. Maryland*, 2016 WL 4512718, at *3.

In Maryland, the test for competency to stand trial is separate and distinct from the test for criminal responsibility at the time of the commission of the offense. *Jolley v. State*, 384 A.2d 91, 102 (Md. 1978). A defendant's competency to stand trial refers to a defendant's ability to understand the nature of the object of the proceeding against him or to assist in his defense. *Hill v. State*, 369 A.2d 98, 102 (Md. Ct. Spec. App. 1977). Criminal responsibility addresses only the defendant's capacity at the time of the offense to (1) appreciate the criminality of that conduct or (2) conform that conduct to the requirements of the law. Md. Code Ann., Crim. Proc. § 3-109(a).

A verdict of not criminally responsible can only be entered after a determination that the defendant is competent to stand trial. *See id.* § 3-104(b).

Defendant maintains that there is no need to appoint a guardian ad litem to assist Beall in this case because Beall was not found incompetent to stand trial in his criminal case and there has been no legal adjudication of incompetence thereafter. ECF No. 9 at 3–6. Beall was charged with second degree assault on October 9, 2007. *See* ECF No. 9-1. On December 26, 2007, the District Court of Maryland for Carroll County committed Beall to the Department for evaluation of his competency and criminal responsibility. *Id.* at 1. In a report signed February 22, 2008, Janet L. Hendershot, Ph.D, and Mary Lou Mosbey, L.C.S.W., opined that Beall was competent to stand trial and did not lack substantial capacity to appreciate the criminality of his conduct or to conform the conduct to the requirements of the law. *Id.* at 9. On August 21, 2008, the court found Beall competent to stand trial and committed Beall to the Department after rendering a verdict of Not Criminally Responsible. Order of Court, *State v. Richard H. Beall*, Jr., Case No. 6S00040935 (Carroll County Circuit Court, August 21, 2008) (provided as ECF No. 9-2).[5]

Beall was initially admitted to Springfield Hospital Center ("SHC"). ECF No. 9-3 ¶ 4. After repeated incidents of assaultive behavior at Springfield, he was transferred to Perkins on February 3, 2014. *Id.* ¶4. Dr. Sonny Miranda, a psychiatrist who has treated Beall since February of 2016, states Beall's current mental health diagnoses include schizoaffective disorder (bipolar type) and antisocial personality disorder. *See* ECF No. 9-3 ¶6. Beall exhibits grandiosity, hyperspirituality, delusions, and paranoia. *Id.* ¶ 7. Dr. Miranda states that Beall's current

---

[5] After a verdict of not criminally responsible, the court must commit the defendant to the Department for institutional inpatient care or treatment. Md. Code Ann., Crim. Proc. § 3-112(a). Although there are exceptions to this requirement, none appear to have applied to Beall. Defendant states Beall also was evaluated for his competency and criminal responsibility in March 2007 for Case Number 10-K-07040816 in the Circuit Court for Frederick County. The evaluation opined Beall competent and criminally responsible, and the Court found Beall competent to proceed in that case. Beall was also evaluated for competency to stand trial in October 2007 and determined competent in Case Number 4S38224 in the District Court of Maryland for Carroll County. *See* ECF No. 9, n.1.

7

delusions include: he is a "true prophet" and that God will give him his full powers upon his release; he commands a private army of thirty thousand men that he can see marching; his medications are poison; the hospital is trying to kill him; the hospital and State of Maryland are trying to prevent him from meeting the archangel Michael and Jesus; and demons are with him because he has not used his telepathic powers. *Id.* ¶ 8. Beall is currently prescribed Quetiapine, Fluphenazine Decanoate, and Loxapine for psychosis; Valproic Acid for moods; and, Zoloft for depression. *Id.* ¶ 9. Dr. Miranda states these medications have helped decrease Beall's observable outward responses to his hallucinations and delusions, but he remains psychotic and delusional with very poor insight into his mental illness. *Id.* ¶ 10. Dr. Miranda observes there is no court order currently challenging Beall's competency. Beall does not have a guardian nor has he requested appointment of a guardian. *Id.* ¶¶ 11–12. In addition to raising an excessive force claim, Beall's pleadings contain a number of bizarre assertions such as he wants FBI agents and the Director of the CIA assigned to his case and he wants NATO troops to take over the Department. ECF No. 4 at 3.

Counsel for the Department avers Beall's bizarre beliefs are insufficient to warrant appointment of a guardian ad litem, noting that Beall's delusions have not interfered with his ability to file pleadings in this case and other cases in this Court. *See, e.g., Beall v. Hogan, et al.,* Civil Action No. GJH-17-423 (D. Md. 2017); *Beall v. Hogan, et al,* Civil Action No. GJH-17-340 (D. Md. 2017); *Beall v. Hogan, et al.,* Civil Action No. 16-3678 (D. Md. 2016); *Beall v. Hockner,* Civil Action No. GJH-16-0423 (D. Md 2016); *Beall v. Springfield Hospital Center,* Civil Action No. GJH-15-2519 (D. Md. 2015); *Beall v. State of Maryland, et al.,* Civil Action No. GJH-15-2180 (D. Md. 2015).

Close examination of the record in this case does not compel a finding of incompetency,

or a need to appoint a guardian ad litem. Beall retains a presumption of competency, his delusional statements do not serve as a bar to his proceeding pro se in this case or negate his capacity to bring this action, and he has been able to articulate his claims or secure meaningful assistance to do so.[6] The Court therefore finds that Beall may continue in this action as a self-represented litigant.

**B. Constitutional Violations**

Beall claims Defendant's actions violate the Eighth Amendment's proscription against cruel and unusual punishment. As noted by Defendant, Beall does not stand convicted of a criminal offense, as he was found not criminally responsible in his criminal case; rather, he is committed to the Department for treatment. *See* Md. Code Ann. Health-Gen. §3-112(a). Because there was no formal adjudication of guilt against Beall for which he could be punished, the Eighth Amendment does not apply. *See, e.g., Jones v. U.S.*, 463 U.S. 354, 369 (1983) ("As he was not convicted, he may not be punished."). The Court therefore analyzes Beall's claims as alleging a violation of his rights under the Due Process Clause of the Fourteenth Amendment. *See Youngberg v. Romeo*, 457 U.S. 307, 324 (1982) (recognizing post-commitment interest as liberty interest under the Due Process Clause); *Williams v. Wasserman*, 164 F. Supp. 2d 591, 614 (D. Md. 2001).

**1. Excessive Force**

The Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed patients with such services as are necessary to ensure "reasonable safety" from themselves and others. Under *Youngberg*, the State "may not restrain residents except when and to the extent professional judgment deems this necessary to assure . . . safety or

---

[6] Beall states he has sought the assistance of another Perkins patient, Daniel Lanahan, in drafting his pleadings. ECF No. 1 at 5. The Court takes notice that Daniel Lanahan is a frequent and experienced pro se filer in the District of Maryland.

9

to provide needed training." 457 U.S. at 324. The State must "provide adequate safe conditions, reasonable freedom from bodily restraint, and 'minimally adequate or reasonable training to ensure safety and freedom from undue restraint.'" *Williams v. Wasserman*, 937 F.Supp. 526 (D. Md. 1996) (quoting *Youngberg*, 457 U.S. at 319).

In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." *Youngberg*, 457 U.S. at 319 (quoting *Poe v. Ullman*, 367 U.S. 497, 542 (1961)). The Court applies the "professional judgment" standard, in which "the Constitution only requires that the Court make certain that professional judgment in fact was exercised." *Youngberg*, 457 U.S. at 321. Decisions made by professionals are presumptively valid and "liability may be imposed only when the decision by the professional is such a *substantial departure* from . . . professional judgment, practice, or standard as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323 (emphasis added). In applying this standard, the Fourth Circuit has held that a defendant's actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional." *Patten v. Nichols*, 274 F.3d 829, 843 (4th Cir. 2001).

Defendant argues that Beall has failed to allege facts to demonstrate that he substantially departed from professional standards. The Court agrees. Maryland law and Perkins Policy permit the use of restraint when patients pose a serious and immediate danger. ECF No. 10-1 at 6; *see also* Md. Regs. 10.21.12.03 (2018); ECF No 10-10 (Perkins Restraint Policy). Here, the uncontroverted evidence is that Beall's restraint was necessitated by his violent and threatening behaviors. Beall's restraint was almost immediately reviewed by Dr. Patel who found

10

Defendant's actions appropriate. Further, Beall's restraint was brief and he was supervised while in the restraint chair, and was released back to his room once he was no longer a threat.

Regarding Beall's claim that Defendant threatened him with a pen against his neck, Beall does not claim he was injured, that he felt threatened, or that he was actually assaulted with the pen. Indeed, Beall provides no evidence that he sustained any injury as a result of this incident and placement in restraints. Against the background of Beall's assault on Defendant, which potentially endangered not only Defendant but other staff and patients, Beall's liberty interest in remaining free of restraint for a limited period of time was properly overridden. *See Washington v. Harper*, 494 U.S. 210, 225 (1990).

### 2. Forced Medication

Pursuant to Maryland law, medication may only be involuntarily administered to an individual "(1) In an emergency, on the order of a physician where the individual presents a danger to the life or safety of the individual or others; or (2) In a nonemergency, when the individual is hospitalized involuntarily or committed for treatment by order of a court and the medication is approved by a panel under the provisions of this section." *See* Md. Code Ann. Health-General § 10-708(b). The code provides detailed procedural requirements for how a clinical review panel may be used to approve the involuntary use of medication—notably, such treatment may not be approved for longer than 90 days. § 10-708(m)(1). Defendant has not produced any records to indicate what medication, if any, Plaintiff involuntarily received on May 31, 2016. *See* ECF No. 10-1 at 12–13 ("Assuming the plaintiff's allegations are true and he did receive emergency medications during the restraint, the administration of such medications was a proper exercise of professional.").

While Defendant notes that "the treatment team pursued a medication order through a clinical review panel," ECF No. 10-1 at 2, Defendant provides no supporting documentation setting forth when the panel was convened and what treatment was approved. Rather, the Court is only aware of a passing reference to a clinical review panel convened on December 16, 2013. *See* ECF No. 10-3 at 1 (Individual Treatment Plan dated May 19, 2016 stating "Mr. Beall was also noncompliant with medications at SHC, and he was approved for involuntary medications by the Clinical Review Panel on 12/16/13").[7]

Defendant has not presented sufficient evidence to establish that Beall's involuntary receipt of medication was proper as the record does not detail what medication was administered and whether that medication was administered on the order of a physician due to an emergency situation or authorized by a clinical review panel. As an involuntarily committed patient in a State psychiatric facility, plaintiff has a "'significant constitutionally protected liberty interest in avoiding the unwarranted administration of antipsychotic drugs.'" *Sell v. United States*, 539 U.S. 166, 178 (2003) (quoting *Harper*, 494 U.S. at 221). "[W]hen the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." *United States v. Bush*, 585 F.3d 806, 813 (4th Cir. 2009). Involuntarily committed mental patients retain a liberty interest in "conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." *Youngberg*, 457 U.S. at 324. Therefore, the Court will deny summary judgment as to this claim without prejudice to refiling within twenty-eight days

---

[7] Defendant cites to ECF No. 10-5 (Progress Note of Sonny Miranda, M.D. dated May 17, 2016) in reference to a purported medication order obtained through a clinical review panel. However, this document only provides Miranda's "Notes on CRP meeting," whereby Miranda reports on Beall's history of inconsistent compliance with his medications and continued involvement in incidents of aggression against staff and other patients. These notes are insufficient to establish that Defendant properly administered medication to Plaintiff involuntarily pursuant to Md. Code Ann. Health-General § 10-708(b)(2).

with documentation to demonstrate that the determination to involuntarily administer medication to Beall on May 31, 2016 was made in a manner consistent with due process.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion, ECF No. 10, is granted, in part. A separate Order follows.

Dated: March 23, 2018

GEORGE J. HAZEL
United States District Judge