# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| RICHARD HOWARD BEALL, JR., | \* |
| Plaintiff, | \* |
| v. | Case No.: GJH-16-3438 |
| | \* |
| MACAULEY UJOATUONU, R.N., | \* |
| Defendant. | \* |

## MEMORANDUM OPINION

Plaintiff Richard Howard Beall, Jr. is involuntarily committed for treatment to the Department of Health and Mental Hygiene (the "Department"). Beall is a patient at Clifton T. Perkins Hospital Center ("Perkins"), a state psychiatric hospital. He claims that Defendant Macauley Ujoatuonu, R.N., a nurse employed at Perkins, forcibly administered medication to him. ECF Nos. 4-5. Defendant has filed an Amended Motion to Dismiss or, in the Alternative for Summary Judgment.[1] ECF No. 14. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons, Defendant's Motion for Summary Judgment, ECF No. 14, is granted.

### I.    BACKGROUND

Beall's mental health diagnoses include schizoaffective disorder (bipolar type) and antisocial personality disorder. ECF No. 14-4 ¶ 6 (Affidavit of Sameer Patel, M.D.). Beall's symptoms of mental illness include grandiosity, hyper-spirituality, delusions about having

---

[1] Beall was provided an opportunity to file an opposition to the Motion and submit declarations and exhibits. ECF No. 15. *See Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (reasoning that pro se plaintiffs should be advised of their right to file responsive material to a motion for summary judgment). Beall has not filed an opposition.

superpower, and paranoia. *Id*. ¶ 7.[2] Beall exhibits poor insight into his mental illness. *Id.*

Beall also exhibits aggressive and assaultive behavior. ECF No. 14-4 ¶ 10; *see also* ECF No. 10-3 at 4-5. Beall has been involuntarily medicated periodically pursuant to determinations made by a clinical review panel ("CRP"). ECF Nos. 14-4 ¶ 8, 14-5 at 2.[3] Due to Beall's inconsistent compliance with medication prescribed for him and increased aggression, the treatment team pursued a medication order through a CRP pursuant to Md. Code Ann. Health-Gen., § 10-708. ECF Nos. 10-5 at 2, 14-4 ¶ 11, 14-5 at 3.

On May 13, 2016, Beall was provided a notice of the clinical review panel meeting. ECF No. 14-8. On May 17, 2016, when the CRP met to discuss Beall's medication and whether to recommend administration of medication for Beall, it considered medical compliance and incidents of aggression. *See* ECF No. 14-4 ¶¶ 9, 10; ECF No. 14-5 at 2-6. Beall, Sonny Miranda, M.D., and Eseigboria Ogunbor, Rights Advisor, were present at the meeting. ECF No. 14-5 at 1. The CRP was composed of Inna Taller, M.D., David Chandran, M.D., and Valorie Grimes, LCSW-C. *Id*. During this CRP, the following incidents were documented. In November 2015, Beall threatened to harm staff. *Id*. at 3. In December 2015, Beall was verbally aggressive towards a registered nurse and required the use of restraints to control his aggression. *Id.* On March 19, 2016, Beall had an altercation with a peer about the television. *Id*. On March 21, 2016, he threatened to

---

[2] Beall's pleadings contain bizarre assertions. For example, he wants FBI agents and the Director of the CIA assigned to his case and he wants NATO troops to take over the Department. Amended Compl. ECF No. 4 at 3. His request for relief seems to include entry into the federal witness protection program. Compl. ECF No. 1 at 4.

[3] Beall was admitted to Perkins in February 2014 His initial CRP was convened in August 2014. Prior to the initial CRP, Beall exhibited episodes of grandiosity, decreased sleep, paranoia and violence. When he stopped taking his medications he had more severe symptoms of aggressive behavior. His CRP was renewed several times, but when he improved on medications, the CRP recommendations from January 29, 2015 were not renewed. Initially, Beall followed his medication regimen without intramuscular injection backup for several months. In April or early May 2015, Beall failed to take his medications properly. Beall became aggressive, threatening to call 30,000 militia men to attack Perkins to break him free. Three CRPs were approved on June 3, 2015, August 31, 2015, and November 24, 2015. CRP Decision, ECF No. 14-5.

kill staff by "spraying them with AK47 bullets." *Id*. He also threatened to harm his psychiatrist. *Id*.

At the CRP meeting, Dr. Miranda explained that Beall's aggression is psychotically driven and dissipates when he adheres to his medication regimen. *Id*. Dr. Miranda indicated that Beall's adherence to his medication regimen had been "short-lived." *Id*. When Beall misses his medication, he clinically decompensates and becomes violent. *Id*. Miranda told the CRP that Beall has poor insight into his illness and need for treatment, and would not take his medications without CRP oversight. *Id*. The CRP record shows that during the meeting Beall was irritable, agitated, and made paranoid and delusional comments. ECF No. 14-4 ¶ 11; ECF No. 14-5 at 3. Beall told CPR members that Satan was talking in his ear and commanding that angels were to be sprayed with bullets from AK47 weapons. ECF No. 14-5 at 3.

The CRP determined Beall posed a danger to himself or others without his medication. *Id*. at 4. The CRP recommended a combination of the following medications for Beall: Quetiapine by mouth, Fluphenazine by mouth, Fluphenazine decanoate by intramuscular injection, Olanzapine or Olanzapine Zydis by mouth, Divalproex Sodium or Valproic Acid by mouth, Fluphenazine by intramuscular injection, Olanzapine by intramuscular injection, Lorazepam by intramuscular injection, and Diphenhydramine by intramuscular injection. *Id*. at 5. The use of an intramuscular injection of Olanzapine and Fluphenazine was authorized if Beall refused medications by mouth. ECF No. 14-4 ¶ 12. ECF No. 14-5 at 5. Dr. Sameer Patel, Beall's treating psychiatrist, stated that these medications are standard practice for treating schizoaffective disorder, and in his professional opinion, is a reasonable exercise of professional judgment. ECF No. 14-4 ¶¶ 5, 18.

Beall appealed the CRP decision. On May 26, 2016, an Administrative Law Judge held a hearing on the appeal, found that Beall met the criteria for involuntary medication under the

3

Maryland Health-General Code § 10-708, and authorized the use of medications approved by the CRP on May 17, 2016 for a ninety-day period. ECF No. 14-6; ECF No. 14-4 ¶ 14.

From May 26, 2016 through June 1, 2016, Beall received his medication by injection after he refused to take his medication orally. *Id.* ¶ 16; ECF No. 10-9. Dr. Patel opines that it was a reasonable exercise of professional judgment to administer the intramuscular injections (Olanzapine and Fluphenazine) authorized by the CRP to treat Beall's mental illness. ECF No. 14-4 ¶ 19.

On May 31, 2016, Beall approached the nurse's station, where Ujoatuonu offered him the medications authorized by the CRP. ECF No. 10-6. Beall was told that he would receive an intramuscular injection if he did not take the prescribed dose of Olanzapine by mouth. ECF No. 10-6, ECF No. 14-4 ¶ 15. Beall indicated he would not accept the intramuscular medication backup that the clinical review panel had approved. Beall refused redirection when asked to leave the nurse's station so that other patients could receive their medication. *Id.* Beall then reached into the nurse's station and punched Ujoatuonu in the face. *Id.* Beall remained combative. While staff placed him into a restraint chair, Beall used his head to hit Ujoatuonu in the lower abdomen. *Id.* Beall was then administered CRP authorized injections of Olanzapine and Fluphenazine. ECF 10-7; ECF No. 14-7.

On October 13, 2016, Beall initiated this case against multiple defendants alleging that he was subjected to excessive force when he was placed in restraints. ECF No. 1. On October 24, 2016, Beall filed an Amended Complaint, which he supplemented on November 2, 2016. ECF Nos. 4, 5. As supplemented, the Complaint alleged that in May of 2016, Beall was placed in cervical restraints, his head was pushed back, and he was injected with medication. ECF No. 4 at

3; ECF No. 5 at 3.[4] As relief, Beall sought damages, investigation, expungement of his criminal history, and his release. *Id.*

On February 2, 2017, the Court dismissed Beall's claims against all Defendants except Macauley Ujoatuonu, the only defendant alleged to be personally involved in the actions underlying the Complaint. ECF No. 7. The Court also ordered counsel for the Department to submit a report on Beall's mental health status to assist in determining whether appointment of a guardian ad litem was necessary. ECF No. 7. On March 1, 2017, counsel filed the court ordered mental health status report. ECF No. 9. Based on this information, the Court determined appointment of a guardian ad litem was not warranted. ECF No. 12 at 5-9.

On March 28, 2017, Defendant Ujoatuonu filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 10. On March 26, 2018, the Court granted Ujoatuonu's Motion for Summary Judgment in part. ECF No. 13, ECF No. 12 at 11 (discussing use of restraint and use of force claim). On that date, the Court provided Ujoatuonu twenty-eight days to submit evidence addressing whether the decision to administer medication forcibly to Beall complied with due process. ECF No. 13. He filed no response, and on April 16, 2018, the Court mailed a Rule 12/56 letter to Beall warning him of the pending motion to dismiss or for summary judgment and informing him of his right to respond to the motion. ECF No. 15. Again, Beall filed no additional response.

## II. STANDARD OF REVIEW

Because the Court relies on evidence outside the pleadings, it will treat the present motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d). Summary judgment is appropriate when the pleadings and evidence demonstrate that "there is no genuine dispute as to any material fact

---

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" where it may "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. On a motion for summary judgment, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992).

### III. DISCUSSION

#### A. Eleventh Amendment

As a threshold matter, Defendant seeks dismissal of claims against him in his official capacity under Eleventh Amendment immunity. The Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived its sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *see also Lanahan v. State of Maryland*, No. JFM-15-2030, 2016 WL 3570602 (D. Md. June 23, 2016) (finding that suits against Perkins are barred under the Eleventh Amendment). Accordingly, Beall's claim for damages against Ujoatuonu in his official capacity is barred by the Eleventh Amendment and will be dismissed.

#### B. Involuntary Administration of Medication

Treatment of a mentally ill person with antipsychotic drugs against his or her will implicates both substantive and procedural due process. *Washington v. Harper,* 494 U.S. 210, 221–

22 (1990). "[W]hen the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." *United States v. Bush*, 585 F.3d 806, 813 (4th Cir. 2009).

As an involuntarily committed patient in a state psychiatric facility, Beall has a "'significant' constitutionally protected 'liberty interest' in 'avoiding the unwarranted administration of antipsychotic drugs.'" *Sell v. United States*, 539 U.S. 166, 178 (2003), quoting *Harper*, 494 U.S. at 221. "[W]hen the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." *United States v. Bush*, 585 F.3d 806, 813 (4th Cir. 2009). "Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions." *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982). The Fourteenth Amendment ensures that states will provide not only for the medical needs of those in penal settings, but for anyone restricted by a state from obtaining medical care on his own. *See DeShaney v. Winnebago*, 489 U.S. 189, 200 (1989); *Youngberg*, 457 U.S. at 324.

Determining whether a substantive right protected by the Due Process Clause has been violated, requires balancing "the liberty of the individual" and "the demands of an organized society." *Youngberg*, 457 U.S. at 319 (quoting *Poe v. Ullman*, 367 U.S. 497, 542 (1961)). A court applies the "professional judgment" standard, in which "the Constitution only requires that the Court make certain that professional judgment in fact was exercised." *Youngberg*, 457 U.S. at 321. Decisions made by professionals are presumptively valid and "liability may be imposed only when the decision by the professional is such a substantial departure from ... professional judgment, practice, or standard as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323. Under this standard, a defendant's actions must

7

have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional." *Patten v. Nichols*, 274 F.3d 829, 843 (2001).

In Maryland, involuntary psychiatric medication may be administered in limited circumstances. Md. Code Ann., Health-Gen. § 10-708(b). Specifically, medication may not be administered over the individual's refusal except: (1) "In an emergency, on the order of a physician where the individual presents a danger to the life or safety of the individuals or others"; or (2) "In an nonemergency, when the individual is hospitalized involuntarily or committed for treatment by order of a court and the medication is approved by a panel under the provisions of this section." *Id.*

The Court is mindful that the forced administration of antipsychotic drugs is an invasion of an individual's liberty not lightly justified under the Due Process Clause. Defendant has made the requisite showing that the balance of interests warranted administering medication to Beall when he refused to take his medication by mouth. First, Perkins has an important governmental interest in maintaining the safety of its patients and staff. Second, without consistent compliance with his medication, Beall's symptoms—including aggression—worsen. Third, involuntary administration is necessary when Beall refuses his medication, otherwise he clinically decompensates and becomes violent posing potential harm to himself and others. Fourth, medical providers have concluded that administration of these drugs is medically necessary.

Beall received procedural protection in the form of a three-person committee of medical professionals not involved in the inmate's diagnosis or treatment, with notice to the inmate and an opportunity to appear at the meeting, as well as the opportunity to appeal the decision to an administrative law judge. These protections satisfy due process requirements. Beall's protected liberty interest in freedom from the forced administration of antipsychotic medication was the

result of the exercise of professional judgment by medical and mental health providers.

**IV. CONCLUSION**

For the reasons stated, Defendant Ujoatuonu's Amended Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 14, shall be treated as a Motion for Summary Judgment and is granted. A separate Order shall be entered in accordance with this Memorandum Opinion.

February 21, 2019  _____/s/_____
GEORGE J. HAZEL
United States District Judge